```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                      EASTERN DIVISION
```

OTTO BERK, *et al.*,

    Plaintiffs,

  vs.                        Civil Action 2:10-CV-1082
                                Judge Frost
                                Magistrate Judge King

ERNIE MOORE, DIRECTOR, *et al.*,

    Defendants.

## OPINION AND ORDER

Plaintiffs, Ohio inmates who were convicted of aggravated murder, murder or rape prior to 1996, bring this action under 42 U.S.C. § 1983, alleging that Ohio's current parole laws, guidelines and a handbook violate the due process clause and the *ex post facto* clause of the United States Constitution and Ohio law.  On July 23, 2012, the United States Magistrate Judge issued an *Order and Report and Recommendation*, Doc. No. 139, that, *inter alia*, recommended that defendants' motion for judgment on the pleadings, Doc. No. 85, be denied as to plaintiffs' *ex post facto* claims, but granted in all other respects.  The parties have objected to the *Order and Report and Recommendation*, Doc. Nos. 144 and 146.  The Court will consider that matter *de novo*. 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b). The Court will first address three motions recently filed by plaintiffs.  Doc. Nos. 150, 151, 152.

I.    **PLAINTIFFS' MOTIONS DOC. NOS. 150, 151, 152**

Plaintiffs filed three motions since the issuance of the *Report*

*and Recommendation*.  Plaintiff Blair filed a motion seeking to add his signature to plaintiffs' rebuttal to defendants' motion to stay discovery.  Doc. No. 151.  That motion is **GRANTED**.

Plaintiff Hall filed a motion for default judgment "pursuant to the Defendant's [sic] acquiescence or, failure to object or, appearance with an affirmative defense prior to the Magistrates [sic] Granting of Doc. 98,[1] 110,[2] 126."[3]  Doc. No. 150.  Plaintiffs Berk, Banks, Blair, Calhoun, Keran and Hall also appear to seek default judgment.  Their motion, Doc. No. 152, asks for "an Order for Rule 54(c) 'Demand Judgment' for Default 'Rule 55(d)['] pursuant to the Defendant's [sic] acquiescence or, appearance with an affirmative defense prior to the Doc.139 Granting Doc. 98, 110 and did failed [sic] to timely object in doc's. [sic] 144, 147 and can be construed as agreement." *Id*. at 2.  In this joint motion, these plaintiffs argue that defendants failed to object to the granting of certain motions:

> [Defendants] did not object to Plaintiff'(s) [sic] Doc. 98,

---

[1] Doc. No. 98 is captioned "Plaintiff's Request Fed. R. Civ. P. 16(a)(1), (c)(3)(4): For Witness Disclosure Evidence."  On November 28, 2011, the Court denied this motion because the affidavits attached to the motion did not relate to any pending motion.  The Court made clear, however, that plaintiffs could submit proper affidavits in support of or in opposition to any motion for summary judgment.  *Order*, Doc. No. 102.

[2] Doc. No. 110 is captioned "Request Leave To For [sic] Fed [sic] Civ. R. Proc. Rule 15 (d) Supplemental Pleadings."  Construing this rambling motion as seeking leave to amend the *Amended Complaint*, Doc. No. 53, in order to add a claim for punitive damages, the Court granted Doc. No. 110.  *Order and Report and Recommendation*, pp. 1-2, 23-24.

[3] Doc. No. 126 is captioned "Requested Leave to File for Supplemental Summary Judgement on the Pleadings."  Construing this motion as seeking leave to supplement plaintiffs' motion for summary judgment, the Court granted the motion only to the limited extent that it supplemented plaintiffs' motion for summary judgment.  *Order and Report and Recommendation*, pp. 11, 24.

>    106,[4] 118,[5] 131[6] claims, and Doc. 110 breach of contract
>    counterclaim(s) for additional punitive damages for 11th.
>    Dist. App. Ct. Decreed breach of a obligation for a specific
>    statute (2907.02(A)(1)(b)) without Force Spec. under
>    2929.11(B)(1)(a) sentence, OR a 'Contrary to Law' sentence
>    under 2929.11(B)(1)(b) (10 to 25 years), the plea involving
>    one (1) victim without "Open" trial court stated underlying
>    crimes.

Doc. No. 152, p. 2. Referring to various cases and statutes, these plaintiffs "Moves [sic] this Court for an Order of Estoppel for doc. 98 as unrebutted, unconstested affidavits, or an affirmative defense or acquiescence default that remains without timely objections for District Court Judge Frost Review." *Id*. at 3.

Although it is unclear exactly what these plaintiffs intend by Doc. No. 152, the motion appears to seek, as does Doc. No. 150, default judgment because defendants failed to respond to certain motions.

As an initial matter, plaintiff Hall's motion is unsigned, Doc. No. 150, p. 5, and is therefore subject to an order to strike the

---

[4] Doc. No. 106 is captioned "Leave of Court to Submit Motion to Supplement Plaintiffs' Request for Relief Plaintiffs' Reasons for Supplement to Request for Relief." Construing the motion as seeking leave to add a claim for punitive damages, the Court granted this motion. *Order and Report and Recommendation*, pp. 1-2, 23-24.

[5] Doc. No. 118 is captioned "Request Leave to Integrate Dockets No, [sic] 98 Into Supplemental Docket 106 as Factual Evidence Exhibit(s), and Exhibits Herein Attached to Docket No. 106 as Confirming Courts:[.]" Construing the motion as asking the Court to consider certain affidavits (submitted as Doc. No. 98) in connection with requests for leave to add a claim for punitive damages to the *Amended Complaint*, the Court granted that motion. *Order and Report and Recommendation*, pp. 1-2, 23-24.

[6] Doc. No. 131 is captioned "Plaintiff"s [sic] Request the Court to Integrate Dockets No.: 98, Into Supplemental Docket No.: 106 as Factual Evidence Evidence Exhibit(s), and Add Exhibit Herein Attached to Docket No.: 106 as Confirming Courts:[.]" As it did with Doc. No. 118, the Court granted Doc. No. 110 after construing it as asking the Court to consider certain affidavits (submitted as Doc. No. 98) in connection with requests for leave to add a claim for punitive damages to the *Amended Complaint*. *Order and Report and Recommendation*, pp. 1-2, 23-24.

filing. Even considering the merits of these motions for default judgment, however, the motions are without merit.

Rule 55 of the Federal Rules of Civil Procedure contemplates a two-step process in obtaining a default judgment against a defendant who has failed to plead or otherwise defend. First, a plaintiff must request from the Clerk of Court an entry of default, describing the particulars of the defendant's failure to plead or otherwise defend. Fed. R. Civ. P. 55(a). If default is entered by the Clerk, the plaintiff must then move the court for entry of default judgment. Fed. R. Civ. P. 55(b). Here, plaintiffs' requests for default judgment do not follow this two-step process but instead collapse the two steps into a single step. This defect alone warrants denial of plaintiffs' requests. *See*, *e.g.*, *Devlin v. Kalm*, No. 11-1261, 2012 FED App. 0876N, at *20-21 (6th Cir. Aug. 9, 2012) ("[I]t was procedurally improper for Plaintiff to move for entry of default judgment without first obtaining an entry of default from the clerk."); *Shepard Claims Serv., Inc. v. William Darrah & Assocs.*, 796 F.2d 190, 193 (6th Cir. 1986) ("[E]ntry of default is just the first procedural step on the road to obtaining a default judgment[.]").

Even overlooking this defect, plaintiffs' requests for default judgment are without merit. An entry of default is appropriate only where a party "has failed to plead or otherwise defend[.]" Fed. R. Civ. P. 55(a). Here, defendants have filed an answer to the *Amended Complaint*, Doc. No. 58, have filed a motion for judgment on the pleadings, Doc. No. 85, and have responded in some fashion to some of plaintiffs' numerous motions. *See*, *e.g.*, Doc. No. 133 (motion to stay consideration of plaintiffs' motion for summary judgment). *See also*

4

Doc. No. 97 (reply memorandum filed in response to plaintiffs' motion to dismiss, Doc. No. 91, which the Court construed as a memorandum in opposition to defendants' motion for judgment on the pleadings). Defendants have not "failed to plead or otherwise defend" this action. In addition, "[a] request to the clerk for entry of default under Rule 55(a) must be supported by an affidavit or other proof." *McCreary v. Wertanen*, No. 10-1457, 2010 U.S. App. LEXIS 27404, at *4 (6th Cir. Dec. 8, 2010). Here, plaintiffs failed to attach any such affidavit in support of their requests. Doc. No. 134.

Based on this record, plaintiffs' requests for default judgment are without merit. *See also Amernational Industries, Inc. v. Action-Tungsram, Inc.*, 925 F.2d 970, 976 (6th Cir. 1991) ("[J]udgment by default is a drastic step which should be resorted to only in the most extreme cases.") (quoting *United Coin Meter v. Seaboard Coastline RR*, 705 F.2d 839, 845 (6th Cir. 1983)).

**II.   DEFENDANTS' OBJECTIONS**

Defendants object to the Magistrate Judge's recommendation that their motion for judgment on the pleadings, Doc. No. 85, be denied in connection with plaintiffs' *ex post facto* claims. More specifically, defendants contend that the Ohio Parole Board Handbook ("the Handbook") and Ohio's Victims' Rights Statutes do not violate the *ex post facto* clause. Defendants further assert that, "[t]o the extent that Plaintiffs may have alleged an *ex post facto* claim regarding the former [Ohio Parole Board] Guidelines Manual [and Matrix], such a claim should have been dismissed as moot since the Guidelines Manual was rescinded before Plaintiffs filed this case on December 3, 2010." Doc. No. 144, p. 6 n.4. Plaintiffs have responded to these

5

objections, insisting that defendants have violated the *ex post facto* clause. Doc. No. 149. The Court shall address each argument in turn.

**A.   The Handbook**

Defendants contend that the Handbook cannot violate the *ex post facto* clause because it is neither a law nor a guideline, but simply a compilation of existing Ohio laws and regulations. Plaintiffs disagree, arguing that the Handbook constitutes a law and that the Ohio Adult Parole Authority ("OAPA") utilizes the Handbook in making parole decisions.

The United States Constitution provides that no "ex post facto Law shall be passed." U.S. Const., Art. I, § 9, cl. 3. *See also* U.S. Const., Art. I, § 10, cl. 1 ("No State shall . . . pass any . . . ex post facto Law."). As the Magistrate Judge explained, the *ex post facto* clause prohibits

> "Congress from passing any law that (1) retroactively imposes punishment for an act that was not punishable when committed, (2) retroactively increases the punishment for a crime after its commission, or (3) deprives one charged with a crime of a defense that was available at the time the crime was committed."

*Order and Report and Recommendation*, p. 9 (quoting *Collins v. Youngblood*, 497 U.S. 37, 42 (1990)).

Here, plaintiffs assert that the OAPA uses the Handbook in rendering parole decisions and that its use of the Handbook is "therefore subject to the Court's scrutiny." Doc. No. 149, pp. 2-3. However, plaintiffs allege no fact in support of this assertion. The Handbook dated April 1, 2010, attached to the *Amended Complaint*, Doc. No. 53, pp. 19-28, simply refers to a variety of policies, statutes and administrative rules applicable to the parole process. *See*, *e.g.*,

*id*. at 19. The Handbook also explains that, although the Ohio Parole Board previously considered the Ohio Parole Board Guidelines Manual, it no longer utilizes that resource: "Accordingly, after April 1, 2010, the Board will continue to exercise its discretionary authority *solely by reference to Ohio statute and administrative code provisions*." *Id*. at 20 (emphasis added). Indeed, the Handbook, which appears to be simply a compilation of various statutes and laws, goes on to detail certain factors that the parole board must, under O.A.C. § 5120:1-1-07, consider when determining an inmate's suitability for release. *Id*. at 19-20. Based on this record, plaintiffs' assertion that the Handbook is used in making parole decisions amounts to nothing more than unsubstantiated speculation, which is insufficient at the pleading stage. *See*, *e.g.*, *Bell Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Accordingly, the Court cannot conclude that plaintiffs have stated a colorable claim that the Handbook constitutes a law that violates the *ex post facto* clause.

### B. Ohio's Victims' Rights Statutes

Defendants next complain that, in construing plaintiffs' pleadings as alleging that current Ohio parole statutes or laws violate the *ex post facto* clause, the Magistrate Judge failed to specify precisely which Ohio parole statutes or laws are challenged by plaintiffs. Defendants contend that plaintiffs challenge only Ohio's victims' rights and notice statutes, *i.e.*, O.R.C. §§ 2967.03, 2967.12, 5149.101 and O.R.C. Chapter 2930 (collectively, "Victims' Rights Statutes"). Doc. No. 144, p. 8. Defendants also argue that this Court has consistently found that such Victims' Rights Statutes are merely procedural and do not increase a prisoner's punishment. *Id*. at

7

8-9 (collecting cases).

Plaintiffs respond that they "have never challenged the Courts' ruling that the Ohio Victims' Services, (OVS) under Senate Bill 2 is not an Ex Post Facto violation as a notification law." Doc. No. 149, p. 3. Instead, plaintiffs appear to argue that the OAPA is improperly using Ohio Victims' Services and is "overstepping its boundaries." *Id*. at 4. More specifically, plaintiffs complain that, once the OAPA has granted parole, "before the inmate is actually released[,] a petition comes into the Ohio Adult Parole Authority from the Ohio Victims' Services and the inmates' granted parole is stopped." *Id*. Plaintiffs further complain that the inmate does not attend any second parole hearing that is thereafter held. *Id*. at 4-5. Plaintiffs complain that "having their paroles revoked by the Ohio Adult Parole Authority due to a petition from the Ohio Victims' Services" is the *ex post facto* claim that "Plaintiffs have made from the very beginning against Defendants." *Id*. at 5. According to plaintiffs, these subsequent parole hearings "are not only sinister, but secretive and a direct violation, of Senate Bill 299, Statute 5149.10[.]" *Id*.

As an initial matter, the Court notes that plaintiffs' current articulation of their *ex post facto* allegations were not clearly framed when the Magistrate Judge issued her recommendation. *See Order and Report and Recommendation*, p. 3 (noting the difficulty in deciphering plaintiffs' claims). In any event, plaintiffs now clarify that their *ex post facto* claims rest on the ability of the Office of Victims' Services ("OVS") to effect hearing before the entire parole board.

Turning to this claim, the Court observes that the OVS was created to "provide assistance to victims of crime, victims'

8

representatives. . . and members of the victim's family." O.R.C. § 5120.60(A), (B).  The OVS employs at least three people who "help parole board hearing officers identify victims' issues and [] make recommendations to the parole board[.]"  O.R.C. § 5120.60(E).  In addition, the Governor and the Director of the Ohio Department of Rehabilitation and Correction must appoint as one member of the parole board and individual who is a victim of a crime, a member of the victim's family or a person "who represents an organization that advocates for the rights of victims of crime."  O.R.C. § 5149.10(B).

Ohio law identifies the OVS as one of several entities that may petition the parole board for a full board hearing.  O.R.C. § 5149.101(A)(1).  *See Arnold v. Ohio Adult Parole Auth.,* 2011 WL 447318 (Ohio App. 10 Dist. Sept. 27, 2011).  If the inmate was, like most of the plaintiffs, convicted of aggravated murder or murder, the board must hold a full board hearing.  O.R.C. § 5149.101(A)(2).  At the full board hearing, the board must permit various persons to testify or to submit written statements, including "[c]ounsel or some other person designated by the prisoner as a representative[.]"  O.R.C. § 5149.101(B)(6).  Although "[t]he prisoner being considered for parole has no right to be present at the hearing, [he] may be represented by counsel or some other person designated by the prisoner."  O.R.C. § 5149.101(C).  The board may or may not approve a recommendation for the parole of a prisoner, or may defer its decision until a later full board hearing, if there is an objection at the full board hearing to that recommendation.  *Id*.

It now appears that plaintiffs' *ex post facto* claims rest on, *inter alia*, the provisions of O.R.C. § 5149.101, which detail how the

9

OVS may petition a full board hearing. However, as defendants point out and as plaintiffs acknowledge, this Court has previously concluded that this victims' rights statute is merely procedural and, even if applied retroactively, does not increase an inmate's punishment. *See*, *e.g.*, *Bruggeman v. Collins*, No. 09-381, 2011 U.S. Dist. LEXIS 2819, at *20-21 (S.D. Ohio Jan. 12, 2011); *Ridenour v. Collins*, 692 F. Supp. 2d 827, 837 (S.D. Ohio 2010). *Cf. Greene v. Knab*, No. 2:09-CV-258, 2010 U.S. Dist. LEXIS 90957 (S.D. Ohio Sept. 2, 2010) (rejecting argument that that the Ohio Parole Board unconstitutionally denied inmate release on parole by retroactively applying O.R.C. § 5149.101 and parole guidelines that were not in effect at the time he was sentenced); *Clumm v. Warden, Chillicothe Corr. Inst.*, No. 2:08-cv-365, 2008 U.S. Dist. LEXIS 70877, at *3-7 (S.D. Ohio Sept. 18, 2008) (concluding, *inter alia*, that O.R.C. § 2967.12 is procedural and does not violate the *ex post facto* clause).

Plaintiffs attempt to distinguish this line of cases, arguing that these decisions simply characterize O.R.C. § 5149.101, as "a notification law only in its practical application to pre-1996, 'Old Law Inmates.'" Doc. No. 149, pp. 4-5. Plaintiffs characterize their claim as challenging, under the *ex post facto* clause, the grant of an OVS petition for a full board hearing. *Id*. This is a distinction without a difference, however, and this Court's prior rejections of *ex post facto* challenges to O.R.C. § 5149.101 expressly considered the procedures about which plaintiffs now complain. Indeed, this Court has expressly considered and rejected plaintiffs' specific argument that a petition by OVS under O.R.C. § 5149.101 automatically results in the denial of parole and a longer sentence. *Ridenour*, 692 F. Supp. 2d at

10

837. Although OVS may petition for a full board hearing, the statute does not mandate that the board deny an inmate parole even after a full board hearing. *See* O.R.C. § 5149.101(C) ("If there is an objection at a full board hearing to a recommendation for the parole of a prisoner, the board *may approve or disapprove the recommendation or defer its decision until a subsequent full board hearing*.") (emphasis added). Under any circumstance, the board retains its tradition, full discretion in deciding whether to grant or deny parole. *See also Ridenour*, 692 F. Supp. 2d at 837 (citing, *inter alia*, *Clumm*, 2008 U.S. Dist. LEXIS 70877, at *3). Accordingly, this Court again reaffirms its conclusion that the retroactive application of the VRS generally and O.R.C. § 5149.101 in particular does not violate the *ex post facto* clause.

    **C.   The Ohio Parole Guidelines Manual**

Defendants also argue that, to the extent that plaintiffs assert *ex post facto* claims that rest on Ohio's former parole guidelines, such claims must be dismissed. As previously set forth by the Magistrate Judge, *Order and Report and Recommendation*, pp. 5-6, a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is resolved by reference to the standard applicable to a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). *See also HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 611 (6th Cir. 2012). Thus, all the factual allegations in the *Amended Complaint* are accepted as true and a motion for judgment on the pleadings will be granted only if the pleading fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Corp. v. Twombly*, 550 U.S. 544, 570 (2007). *See also Ashcroft v. Iqbal*, 556

U.S. 662, 679 (2009) ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."). However, a claim "requires more than labels and conclusions, and a formulaic recitation of the elements of the cause of action will not do." *Twombly*, 550 U.S. at 555. *See also HDC, LLC*, 675 F.3d at 611 ("Merely pleading facts that are consistent with a defendant's liability or that permit the court to infer misconduct is insufficient to constitute a plausible claim."). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555. In addition, although the Court's decision "rests primarily upon allegations in the complaint, 'matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint[] also may be taken into account.'" *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008) (quoting *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).

The United States Court of Appeals for the Sixth Circuit previously detailed the history of Ohio's sentencing scheme and discretionary parole guidelines:

> Under Ohio's former sentencing law, Ohio inmates were given an indeterminate sentence comprised of a minimum and a maximum sentence. An inmate became eligible for parole after serving his or her minimum sentence, minus credit for good behavior. Parole decisions were delegated to the Ohio Adult Parole Authority ("OAPA"). It determined when release was appropriate for each inmate. In 1995, Ohio adopted a new sentencing system for crimes committed after July 1, 1996. *See* OHIO REV. CODE § 5120 *et seq*. Under the new law, indeterminate sentences were abandoned in favor of fixed terms of incarceration determined by the defendant's presiding judge. The new system does not apply retroactively to Ohio inmates sentenced under the former

>sentencing scheme. OHIO REV. CODE § 5120.021(A).
>
>In 1998, the OAPA adopted guidelines designed to guide the discretion of parole officers making release determinations for Ohio inmates sentenced prior to July 1, 1996.[7] The guidelines are similar to the guidelines used by the United States Parole Commission, using two factors to determine how long a prisoner should be incarcerated before parole: (1) the seriousness of the inmate's crime, and (2) the "risk of reoffense," based on the inmate's prior criminal conduct and performance on probation and parole. The presumptive amount of time an inmate serves is determined by finding the intersection on a grid between the inmate's offense category and his or her risk of reoffense. Parole officials, however, retain discretion to depart from the guidelines, but may not retain an inmate beyond the maximum sentence. *See* OHIO REV. CODE § 2967.03 (describing the OAPA's broad discretionary powers).

*Michael v. Ghee*, 498 F.3d 372, 374 (6th Cir. 2007). The OAPA subsequently amended these discretionary guidelines in 2000:

>In response to Senate Bill 2, the OAPA revised the parole guidelines in 1998, and again in 2000, to give a projected release date to those inmates who were convicted prior to 1 July 1996 and who did not get the benefit of a definite sentence. These guidelines assigned a numerical offense category to an inmate based upon the nature of his or her crime, and a risk score based upon several factors including the inmate's criminal record and institutional behavior. The two numbers were then placed on a grid which determined the recommended range of time in terms of the number of months that the inmate should serve before he or she would be considered suitable for parole release ("the guideline range"). The projected release date was set for a period of time within the guideline range. These guidelines were not mandatory and the OAPA had the discretion to depart upward or downward from the guideline score.

*Mubashshir v. Sheldon*, No. 1:11-CV-1623, 2012 U.S. Dist. LEXIS 344, at *2-3 (N.D. Ohio Jan. 3, 2012). The parole guidelines were again amended in 2007, but ultimately abandoned by the parole board in 2010:

---

[7]"Prior to 1987, no guidelines were issued to guide the parole board's discretion in making sentencing determinations. In 1987, the parole board adopted guidelines to assist it in exercising its discretion." *Michael v. Ghee*, 498 F.3d 372, 374 (6th Cir. 2007). Eleven years later, the OAPA again amended the guidelines in 1998. *Id*. at 384.

> The Ohio Parole Board Guidelines Manual and Matrix, initially developed in 1998, and most recently amended in 2007, was created and used by the Board to promote consistent decision making for a large number of parole eligible inmates. . . . Ohio's change to a determinate sentencing system in 1996 (Senate Bill 2) has, over time, dramatically transformed Ohio's parole eligible population. . . . Therefore, use of the Ohio Parole Board Guidelines Manual is no longer practical or effective. Accordingly, after April 1, 2010, the Board will continue to exercise its discretionary release authority solely by reference to Ohio statute and administrative code provisions. The Board will no longer use the Ohio Parole Board Guidelines Manual and Matrix in the release decision process.

Handbook, dated April 1, 2010, attached to *Amended Complaint*, p. 20.

Defendants argue that, "[t]o the extent that Plaintiffs may have alleged an *ex post facto* claim regarding the former Guidelines Manual, such a claim should have been dismissed as moot since the Guidelines Manual was rescinded [on April 1, 2010] before Plaintiffs filed this case on December 3, 2010." Doc. No. 144, p. 6 n.4. *See also Defendants' Reply in Support of Motion for Judgment on the Pleadings (Doc. 85)*, No. 97, p. 3 (stating, *inter alia*, that the 2007 parole guidelines were rescinded "because the unique characteristics of the remaining parole eligible offenders made it impossible to generalize release decisions") (citing Handbook, attached to *Amended Complaint*).

In response, plaintiffs confirm that they intend to assert *ex post facto* claims based on "former Ohio Parole Board Guidelines Manual and Matrix[,]" insisting that they have made such claims "from the beginning of this lawsuit[.]" Doc. No. 149, p. 1. Plaintiffs disagree that such claims are moot, arguing that they "are still serving out the continuances they received under those former Guidelines until such time as they have new parole hearings." *Id*. Plaintiffs therefore contend that the former guidelines, which were

14

not in effect when plaintiffs were sentenced, are not moot as to them. *Id*. at 1-2. Plaintiffs also insist that they "have a minimum sentence since all Plaintiffs had a minimum parole eligibility date." *Id*. at 2. Plaintiffs further argue that "Defendants admit to the Ex Post Facto violation by admitting that the Guidelines never applied to Plaintiffs[.]" *Id*.

Again, the Court notes that the *Amended Complaint* is not a model of clarity. Although plaintiffs now confirm that they intend to challenge former guidelines, it is not clear from the rambling *Amended Complaint* which former guidelines (*i.e.,* those developed in 1998, 2000 or 2007 or all of these former guidelines) applied to (and are challenged by) plaintiffs.[8] The Court is unable to locate any specific allegations as to any set of former guidelines as to each specific plaintiff. Stated differently, the *Amended Complaint*, which the Court construes liberally, *see Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011), is devoid of any factual allegations that any of these former guidelines present a "significant risk" of increasing the amount of time actually served by these plaintiffs. *See Michael*, 498 F.3d at 383. For example, although plaintiffs cite to cases that

---

[8]Although all plaintiffs were convicted prior to 1996, it is not immediately clear from the *Amended Complaint* when exactly each plaintiff was convicted. When each plaintiff was convicted affects the *ex post facto* analysis. For example, the Sixth Circuit previously explained how a conviction date plays a role in determining whether there has been an *ex post facto* violation:

> For plaintiffs who were convicted before the 1987 guidelines were in effect, the relevant *ex post facto* inquiry is whether the present guidelines created a sufficient risk of increased punishment compared to the pre-1987 standards; for plaintiffs convicted after 1987, the comparison is between the 1987 guidelines and the 1998 guidelines.

*Michael*, 498 F.3d at 384.

15

purportedly address the 2007 guidelines, *see*, *e.g.*, *Amended Complaint*, pp. 2-3, the Court cannot find any factual allegations as to an *ex post facto* violation based on the application of former guidelines to the plaintiffs in this action.  Indeed, although the *Amended Complaint* includes some legal assertions related to parole guidelines generally, *see, e.g., Amended Complaint*, p. 5,[9] there are no factual allegations as to any substantial risk of increased prison time or even *ex post facto* violations based on former guidelines.  For example, plaintiffs allege generally that the OVS, through various statutes and petitions, prejudiced plaintiff Berk's hearing on parole eligibility and suitability.  *Amended Complaint*, p. 6.  Plaintiffs go on to allege that various versions of the Handbook and undefined "S.B.2 Procedures have increased the length of Berks [sic] incarceration before parole based on circumstance that have not changed since Berk was sentenced by operation of law and has no control."  *Id*.  However, the *Amended Complaint* does not allege that the parole board considered any of the former parole guidelines when it purportedly increased the length of plaintiff Berk's incarceration or that former guidelines played any role whatsoever in that decision.  Stated differently, there are no factual allegations that any set of former guidelines created a significant risk of increasing the amount of time actually served by Berk.

The allegations specific to plaintiffs Blair, Hall and Banks are

---

[9]"Whereas, Now! The defendants state that the prior usurped 1998, 2005, and 2007 Parole Board Guidelines 'artifice Hearing' do not contain recoupment or restoration provisions for the Operations of Law minimum considerations of parole eligibility or suitability standards ab initio[.]"

16

similarly deficient.  Rather than alleging that the parole board used a set of former guidelines to increase their sentences, these plaintiffs instead focus primarily on the role of OVS, testimony at full board hearings and O.R.C. § 5149.101.  *Id*. at 7-9.  However, these attacks fail for the reasons previously discussed.  Although plaintiffs indicate in their response to defendants' objections that they intend to challenge former parole guidelines, Doc. No. 149, pp. 1-2, the *Amended Complaint*, which is the determinative pleading, makes no such factual allegations.  Although the Court must and does construe the *Amended Complaint* liberally, the Court cannot fabricate factual allegations to support plaintiffs' legal conclusions.  *See*, *e.g.*, *Grinter v. Knight*, 532 F.3d 567, 577 (6th Cir. 2008) ("As [plaintiff] Grinter pleads a legal conclusion without surrounding facts to support the conclusion stated in this claim, he fails to state a claim."); *Kamppi v. Ghee*, No. 99-3459, 208 F.3d 213 (table), 2000 WL 303018, at *1 (6th Cir. Mar. 14, 2000) ("Thus, the less stringent standard for *pro se* plaintiffs does not compel the courts to conjure up unpleaded facts to support conclusory allegations.").  *See also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").  Therefore, notwithstanding opportunities to amend their complaint, Doc. Nos. 53, 139, plaintiffs offer nothing more than legal conclusions that their constitutional rights have been violated, which is insufficient at this stage.  *Id.*; *Twombly*, 550 U.S. at 555 ("[A claim] requires more than labels and conclusions, and a formulaic recitation of the elements of the cause of action will not do.").  Based on this record, plaintiffs have failed to state an *ex post facto* claim based on former

17

guidelines.

In short, the Court concludes that plaintiffs have failed to state a colorable claim under the *ex post facto* clause of the United States Constitution.

Having carefully reviewed the *Order and Report and Recommendation* and the parties' objections, the Court **GRANTS** defendants' objections as they relate to their motion for judgment on the pleadings in connection with plaintiffs' *ex post facto* claims. With that exception, the *Order and Report and Recommendation*, Doc. No. 139, is **ADOPTED AND AFFIRMED.** Specifically, defendants' motion for judgment on the pleadings, Doc. No. 85, is **GRANTED in its entirety**; plaintiffs' motion to dismiss the motion for judgment on the pleadings, Doc. No. 91, is **DENIED**; plaintiffs' motion for summary judgment, Doc. No. 125, is **DENIED in its entirety**; plaintiffs' motion for a temporary restraining order/preliminary injunction, Doc. No. 112, is also **DENIED.**

In addition, defendants' motion to stay discovery, Doc. No. 145, is **DENIED as moot**; and plaintiff Hall's motion for default judgment, Doc. No. 150, is **DENIED**; plaintiffs' motion to add Jeff Blair's signature to the rebuttal to defendants' motion to stay discovery, Doc. No. 151, is **GRANTED**; and the motion of plaintiffs Berk, Banks, Blair, Calhoun, Keran and Hall for default judgment, Doc. No. 152, is **DENIED.**

The Clerk is **DIRECTED** to enter **FINAL JUDGMENT** in this case.

                                               /s/ Gregory L. Frost
                                                   Gregory L. Frost
                                        United States District Judge